UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| GARY MICHAEL FRITZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO. 1:12-CV-00342 |
| ) | |
| CAROLYN W. COLVIN,[1] ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Plaintiff Gary Michael Fritz appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying his application under the Social Security Act (the "Act") for a period of disability and Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[2] (*See* Docket # 1.) For the following reasons, the Commissioner's decision will be AFFIRMED.

## I. PROCEDURAL HISTORY

Fritz applied for SSI and DIB in May 2010, alleging disability since May 14, 2010. (Tr. 12, 168-81.) The Commissioner denied his application initially and upon reconsideration (Tr. 97-104, 109-22), and Fritz requested an administrative hearing (Tr. 123-26). Administrative Law Judge ("ALJ") Terry Miller conducted a hearing on June 10, 2011, at which Fritz, who was

---

[1] Although Plaintiff brought this suit against Michael J. Astrue, the former Commissioner of Social Security, Carolyn W. Colvin became the Acting Commissioner on February 14, 2013. (Social Security Opening Br. of Pl. ("Opening Br.") 1 n.1.) As such, under Federal Rule of Civil Procedure 25(d), Colvin is automatically substituted as a party in place of Astrue. FED. R. CIV. P. 25(d).

[2] All parties have consented to the Magistrate Judge. (Docket # 13); *see* 28 U.S.C. § 636(c).

1

represented by counsel; his wife; and a vocational expert ("VE") testified. (Tr. 36-92.) On July 15, 2011, the ALJ rendered an unfavorable decision to Fritz, concluding that he was not disabled because he could perform a significant number of jobs in the economy. (Tr. 12-30.) The Appeals Council denied his request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-7; *see* Tr. 256-57.)

On September 27, 2012, Fritz filed a complaint with this Court, seeking relief from the Commissioner's final decision. (Docket # 1.) In his appeal, Fritz argues that the ALJ failed to account for all of his impairments in assessing his residual functional capacity ("RFC") and erred in relying on a state agency psychologist's opinion that was not based on all of the relevant evidence. (Opening Br. 8-12.)

## II. FACTUAL BACKGROUND[3]

### *A. Background*

At the time of the ALJ's decision, Fritz was forty-eight years old (Tr. 28, 41, 168), had a high school education (Tr. 45, 201), and had previously worked as a welder (Tr. 255). Fritz alleged in his disability reports that he became disabled due to short term memory loss, headaches, blurred vision, hand numbness, learning disability, reading difficulties, sleepiness, exhaustion, symptoms of multiple sclerosis, and back and leg pain. (Tr. 200, 230.)

### *B. Fritz's Testimony at the Hearing*

At the hearing, Fritz testified that he is married and lives with his wife and two children. (Tr. 43.) He has a driver's license, but has not driven in over a year because of dizziness. (Tr. 45.) Fritz stated that he was in the National Guard for six years and had worked as a welder until

---

[3] In the interest of brevity, this Opinion recounts only the portions of the 487-page administrative record necessary to the decision.

2010, when he quit after falling into the press weld twice due to dizziness. (Tr. 45-47.)

Fritz identified his biggest physical problem as his back pain, which radiates into both of his legs; he further complained of dizziness and daily headaches. (Tr. 49, 76.) Fritz also reported experiencing "about seven strokes so far," which resulted in memory loss, but had not yet affected his ability to use his body. (Tr. 60-61.) Due to his memory loss, he would forget to turn in paperwork when he was working and now forgets to fix things around the house; his wife or children have to remind him of tasks and to take his medicine, and, although he can read simple messages and words, he sometimes forgets them. (Tr. 46, 61-62, 74.)

In a typical day, Fritz gets out of bed and watches television all day; he can pay attention to "some" of a half-hour long news program. (Tr. 65.) Fritz further represented that although he used to be able to cook eggs or make grilled cheese sandwiches, he no longer does any cooking or meal preparation. (Tr. 67.) Similarly, while he used to mow the grass, he stopped about a year ago. (Tr. 68.) He likes to target shoot and still does so a "little bit"; he stated that he had to sell some of his guns because he cannot shoot them anymore.[4] (Tr. 69-70.)

### C. *Summary of the Relevant Medical Evidence*

In September 2008, Fritz saw Dr. Dean Mattox, a family physician, for his hypertension. (Tr. 292.) Dr. Mattox's assessment noted fatigue, elevated blood pressure, hypertension, memory loss, and dementia. (Tr. 293.) Dr. Mattox recommended a brain MRI for progressively worsening memory loss and dementia. (Tr. 294.) A MRI of Fritz's brain performed a few days later revealed evidence of old ischemia in the right basal ganglia, scattered T2 hyperintense foci

---

[4] Fritz's wife also testified at the hearing, essentially corroborating his testimony. (Tr. 78-83.) She further reported that Fritz has forgotten to lock doors and turn off lights at night and left his keys in his truck. (Tr. 80-81.)

in the cerebral white matter, and mucosal sinus disease in the frontal and maxillary sinuses. (Tr. 264-65.)

Five days later, Dr. Bhupendra Shah examined Fritz, who reported memory difficulties for the past eight to nine years. (Tr. 267.) More recently, he had been having memory problems at work and home; his wife would say something to him, and he would forget it a few minutes later. (Tr. 267.) Dr. Shah stated that it would be unusual for Fritz to have senile dementia because of his chronological age, but that a possibility of this could not be ruled out. (Tr. 267.)

Fritz returned to Dr. Shah in November 2008, reporting the same memory troubles. (Tr. 266.) Dr. Shah performed a mini mental status exam on Fritz, who scored a 29 out of 30; although this score was in the normal range, Dr. Shah could not rule out the possibility of mild cognitive dysfunction. (Tr. 266.)

The following month, Fritz had another appointment with Dr. Mattox for his blood pressure. (Tr. 296.) Dr. Mattox assessed Fritz with reduced fatigue, elevated blood pressure, hypertension, memory loss, dementia, and erectile dysfunction. (Tr. 297.) By Fritz's next visit with Dr. Mattox in February 2009, memory loss and dementia were dropped from Dr. Mattox's current assessment, but memory loss was noted as a chronic problem or diagnosis. (Tr. 301.)

Fritz saw Dr. Mattox again in February 2009, complaining of facial swelling, cough, congestion, and chest aches. (Tr. 300.) Dr. Mattox ordered CT scans of Fritz's head, sinuses, and neck (Tr. 301-02), which revealed, among other findings, old right basal ganglia lacunar infarct with no acute intracranial abnormality, significant bilateral maxillary sinusitis with mild bilateral ethmoid and frontal sinus disease, and mild atherosclerotic disease of the extracranial carotids (Tr. 272-77). In subsequent treatment notes, Dr. Mattox indicated that Fritz had

4

suffered a stroke in August 2008. (*E.g.*, Tr. 305, 309, 311, 314, 338.)

In November 2009, Dr. Mattox ordered a MRI of Fritz's brain due to his chronic, month-long cephalgia and history of stroke pain. (Tr. 315, 317.) The MRI findings included evidence of previous right basal ganglia infarct with associated encephalomalacia in the right frontal lobe and scattered T2 hyperintense foci in the cerebral white matter that had slightly progressed since the previous examination, possibly because of a demyelinating process, small vessel disease, or a sequella of an inflammation or infection. (Tr. 277-78.)

The following year, in June 2010, Dr. Ryan Oetting conducted a consultative psychological evaluation of Fritz. (Tr. 351-62.) Dr. Oetting noted that Fritz's thought processes were logical and sequential and his communication was on task; Fritz also appeared to comprehend the test directions given to him. (Tr. 351.) Fritz recounted his work history to Dr. Oetting, reporting that he was last employed in May 2010 and quit because he could not keep up his production rate and started forgetting things, like clocking in or out of work. (Tr. 351.) He traced many of his work problems back to a verbal altercation he had with a co-worker in 2008. (Tr. 351.) Fritz further stated that Dr. Shah believed he had experienced two mini-strokes, one in August 2008 after the confrontation with his co-worker and a second in June 2009. (Tr. 351.) On the Wechsler Adult Intelligence Scale, Fritz scored a Full Scale IQ of 66, a Verbal Comprehension IQ of 68, and a General Ability IQ of 72; Dr. Oetting found that, overall, Fritz appeared to fit the borderline category of intellectual functioning. (Tr. 353.) After administering the Wechsler Memory Scale, Dr. Oetting concluded that Fritz's memory fit into the borderline range as well, with significant memory deficits in auditory memory, especially in his immediate recall of verbally presented items. (Tr. 354.) Ultimately, Dr. Oetting diagnosed Fritz with major

depressive disorder, single episode, mild; amnestic disorder due to stroke; rule-out learning disorder; and borderline intellectual functioning. (Tr. 355.)

Also in June 2010, Fritz saw Dr. Vijay Kamineni for a consultative physical examination. (Tr. 364-68.) Dr. Kamineni noted that he alleged disability due to dizziness and leg pain. (Tr. 364.) Fritz reported having two strokes and memory difficulties, but that he could drive occasionally, dress himself, and cook simple meals. (Tr. 364.) On a mini mental status exam, Fritz scored a 12 out of 30, which Dr. Kamineni noted was in the dementia range. (Tr. 366-67.) Dr. Kamineni further indicated that Fritz had a history of infarct in the right basal ganglia and that his memory loss symptoms had worsened since his stroke. (Tr. 366.) In the end, Dr. Kamineni concluded, among other opinions, that Fritz had abnormal concentration and social interaction secondary to short term memory deficits related to stroke and that his remote memory was intact, but his recent memory was impaired. (Tr. 366.)

The next month, Dr. Amy Johnson, a state agency psychologist, reviewed Fritz's record, finding him moderately limited in his abilities to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; sustain an ordinary routine without special supervision; and respond appropriately to changes in the work setting, but not significantly limited in the remaining fifteen areas of work-related mental activities. (Tr. 370-71.) She noted that Fritz was able to do a variety of activities, including care for his hygiene, use a microwave and rider mower, vacuum, drive, shop, and socialize with family; she further acknowledged that he had some memory problems, but observed that, at the mental status examination, he could recall incidents when he had forgotten things such as names or how to fix things and was still able to drive and recall how to use a microwave and rider mower. (Tr. 372.)

6

Given that Fritz's activities of daily living appeared to be within normal limits, Dr. Johnson determined that his allegations concerning his functioning were only partially credible. (Tr. 372.) Ultimately, Dr. Johnson concluded that Fritz could understand, remember, and carry out simple tasks, relate on at least a superficial and ongoing basis with co-workers and supervisors, attend to tasks for sufficient periods of time to complete them, and manage the stress involved with simple work. (Tr. 373.) A second state agency psychologist later affirmed this assessment. (Tr. 408.) Fritz returned to Dr. Mattox's office throughout the rest of 2010 and into 2011, seeking treatment for his blood pressure, back and leg pain, and other ailments. (*See* Tr. 417-31, 470.) Dementia was never included as a diagnosis on any of these visits. (*See* Tr. 418-21, 423-24, 426-27, 430-31, 470.)

In November 2011, Fritz went to the emergency room for a headache. (Tr. 474-78.) A head CT was performed, which revealed that his head was unchanged from the February 2009 study with evidence of an old right basal ganglia infarct with associated encephalomalacia and compensatory dilatation of the frontal horn of the right lateral ventricle and no evidence of acute intracranial abnormality. (Tr. 479.)

### III. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005)

7

(citation omitted).  The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard.  *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's.  *Id.*  Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive.  *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003).  Nonetheless, "substantial evidence" review should not be a simple rubber-stamp of the Commissioner's decision.  *Clifford*, 227 F.3d at 869.

## IV.  ANALYSIS

### A.  *The Law*

Under the Act, a claimant is entitled to DIB or SSI if he establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 416(i)(1), 423(d)(1)(A), 1382c(a)(3)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's

8

impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant is unable to perform his past work; and (5) whether the claimant is incapable of performing work in the national economy.[5] *See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); 20 C.F.R. §§ 404.1520, 416.920. An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

## B. *The ALJ's Decision*

On July 15, 2011, the ALJ rendered the decision that ultimately became the Commissioner's final decision. (Tr. 12-30.) He found at step one of the five-step analysis that Fritz had not engaged in substantial gainful activity since his alleged onset date, and, at step two, that Fritz had the following severe impairments: history of chronic low back pain with degenerative disc desiccation, sciatic pain, and myalgias; history of old ischemia/infarct in the right basal ganglia; hypertension/hypercholesterolemia; some hearing loss, specifically bilateral high frequency sensorineural hearing loss that is noise induced; borderline intellectual functioning; amnestic disorder due to stroke with some memory deficits; and a learning disorder. (Tr. 14.) At step three, the ALJ determined that Fritz's impairment or combination of impairments did not meet or medically equal a listing. (Tr. 15-18.) Before proceeding to step

---

[5] Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks the claimant can do despite his limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. §§ 404.1520(e), 416.920(e).

9

four, the ALJ determined that Fritz's statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible to the extent they were inconsistent with the following RFC (Tr. 21-22):

> [T]he claimant has the residual functional capacity to perform "light" work . . . . He is further limited as follows: he needs a sit/stand option (where the individual can occasionally change positions throughout the eight-hour workday, but still pay attention to the task at hand); he can only occasionally climb ramps/stairs, balance, stoop, kneel, crouch and crawl; he can never climb ladders, ropes or scaffolds; he can only occasionally have oral communications with others; he cannot tolerate excessively loud background noise; and[ ] he should have no concentrated exposure to hazards (i.e. work around dangerous moving machinery and work at unprotected heights). He is further limited to unskilled work (i.e. occupations that can be learned within a short period of time, no more than 30 days), involving simple, routine repetitive tasks with the ability to sustain those tasks throughout an eight-hour workday. He can have only occasional changes in the work setting; no tasks requiring intense focused attention for more than 30 minutes continuously; no fast-paced production rate work; only superficial interactions with others; and no work requiring more than occasional simple reading, writing and math calculations.

(Tr. 18).

Moving onto step four, the ALJ found that Fritz was unable to perform his past relevant work as a welder. (Tr. 28.) Based on the RFC and the VE's testimony, the ALJ then determined at step five that Fritz could perform a significant number of jobs within the economy, including electrical accessories assembler, parking lot attendant, and ticket taker. (Tr. 28-29.) Thus, Fritz's claims for DIB and SSI were denied. (Tr. 29.)

### C. *The RFC Assigned by the ALJ Is Supported by Substantial Evidence*

Fritz first contends that the ALJ's assigned RFC was flawed because it did not account for his dementia. (Opening Br. 8-11.) This argument, however, does not necessitate a remand.

The RFC is a determination of the tasks a claimant can do despite his limitations. *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC assessment "is based upon consideration of

all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence." SSR 96-5p, 1996 WL 374183, at *5; *see* 20 C.F.R. §§ 404.1545, 416.945. When assigning an RFC, an ALJ must consider the combined effect of a claimant's severe and non-severe impairments. *See Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005); *Barrett v. Barnhart*, 355 F.3d 1065, 1068 (7th Cir. 2004); *Clifford*, 227 F.3d at 873; *Green v. Apfel*, 204 F.3d 780, 782 (7th Cir. 2000); 20 C.F.R. §§ 404.1523, 416.923.

When listing Fritz's severe impairments at step two, the ALJ did not include dementia among them. (Tr. 14.) Fritz acknowledges that this omission is not fatal, arguing instead that the ALJ's RFC was incomplete because it did not account for the additional limitations imposed by his dementia. (Opening Br. 10 n.8, 11; Soc. Sec. Reply Br. of Pl. ("Reply Br.") 1, 2 n.1.) According to Fritz, although the ALJ included amnestic disorder due to stroke with some memory deficits among his severe impairments, this does not account for all of his nonexertional limitations because dementia and amnestic disorders are fundamentally different diagnoses; while both conditions involve memory impairment, dementia also must include "'at least one of the following cognitive disturbances: aphasia, apraxia, agnosia, or a disturbance in executive functioning.'"[6] (Opening Br. 10-11 (quoting AMERICAN PSYCHIATRIC ASSOCIATION,

---

[6] Aphasia is a deterioration of language function. AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 148 (4th ed., Text Rev. 2000). Apraxia is an impaired ability to execute motor activities despite intact motor abilities, sensory function, and comprehension of the required task. *Id.* at 149. Agnosia is the failure to recognize or identify objects despite intact sensory function. *Id.* And executive functioning involves the ability to think abstractly and plan, initiate, sequence, monitor, and stop complex behavior. *Id.*

11

DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 156 (4th ed. 1994).)

First, although Fritz argues that the ALJ either ignored or rejected the evidence of his dementia without explanation (Opening Br. 11), it is questionable whether Fritz was even conclusively diagnosed with dementia. Dr. Mattox included dementia in two treatment notes in September and December 2008 (Tr. 293, 297)—before Fritz's alleged onset date—but then dropped dementia from his diagnoses in February 2009 (Tr. 301) and never included that diagnosis again (*see* Tr. 306-07, 309-15, 318-19, 322-23, 325-26, 418-21, 423-24, 426-27, 430-31, 470). Moreover, Dr. Shah stated in September 2008 that it would be unusual for Fritz to have senile dementia because of his chronological age, though the possibility of this could not be ruled out. (Tr. 267.) On the other hand, Fritz's score from the June 2010 mini mental status exam did place him in the dementia range (Tr. 366-67), a fact which the ALJ explicitly noted in his decision (Tr. 26).[7] As such, while the ALJ did not consider Fritz's purported dementia a severe impairment, the ALJ did not ignore evidence of that impairment either.

But, even if Fritz was definitively diagnosed with dementia, the diagnosis of an impairment does not alone establish its severity or limitations. *See Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) ("The issue in the case is not the existence of these various conditions of [claimant's] but their severity and, concretely, whether . . . they have caused her such severe pain that she cannot work full time."); *Estok v. Apfel*, 152 F.3d 636, 639-40 (7th Cir. 1998) (noting that, whatever the diagnosis, the claimant must provide sufficient evidence of

---

[7] Fritz further points out the contrast between this June 2010 score and his 29 out of 30 score in September 2008, suggesting that a progression of the scattered T2 hyperintense foci in his cerebral white matter, revealed in an October 2009 MRI, might explain the decrease. (Opening Br. 9 n.7.) He then notes that "[t]he ALJ did not address this dramatic decrease in scores." (Opening Br. 9 n. 7.) To the extent Fritz takes issue with this, no physician in the record addressed this score decrease, and the ALJ appropriately declined to "succumb to the temptation to play doctor and make [his] own independent medical findings," *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996).

actual disability); *Bucholz v. Astrue*, No. 08-cv-4042, 2009 WL 4931393, at *11 (C.D. Ill. Dec. 15, 2009) ("The issue for disability benefits is not whether a claimant has a disease, but whether that disease affects her ability to work." (citing 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1))).

Fritz maintains that the ALJ failed to account for the limitations of his dementia as the ALJ's mental RFC focused almost entirely on his memory problems and inabilities to handle complex tasks and sustain intense focus. (Reply Br. 1.) The record is replete with evidence of memory impairment, which the ALJ certainly considered. (*See* Tr. 19 (mentioning Fritz's testimony at the hearing that he sometimes forgets simple messages or words), 20 (recounting Fritz's testimony that he forgets items at home and to take his medications), 21 (mentioning Fritz's wife's testimony that he has forgotten things around the home), 26 (recounting Fritz's dementia range score on the June 2010 mental status exam and Dr. Kamenini's conclusions that Fritz had an impaired recent memory, but intact remote memory), 27 (mentioning Fritz's statements to Dr. Johnson that he forgot things at work like clocking out).)

What is missing from Fritz's argument is any evidence of the other symptoms of his purported dementia—aphasia, apraxia, agnosia, or a disturbance in executive functioning—evidence which Fritz, who is represented by counsel, bears the burden of producing, *see Castile v. Astrue*, 617 F.3d 923, 927 (7th Cir. 2010); *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004) ("It is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove their claim of disability."); *see also Glenn v. Sec'y Health & Human Servs.*, 814 F.2d 387, 391 (7th Cir. 1987) ("When an applicant for social security benefits is represented by counsel the administrative law judge is entitled to assume that the applicant is making his strongest case for benefits."). Indeed, Fritz asserts that the ALJ's

13

consideration of his amnestic disorder did not account for all of the symptoms of his dementia (Opening Br. 11; Reply Br. 2), but fails to point to any evidence in the record establishing that he experienced these symptoms, *see U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs"). Moreover, while there may be a potential diagnosis of dementia, there is no opinion in the record establishing the severity of that impairment or how it affected Fritz's ability to work. *See Estok*, 152 F.3d at 639-40 (finding that a diagnosis alone was not probative evidence of disability when the physician gave no opinion regarding the severity of the condition or its impact on the claimant's functional capacity).

The RFC must incorporate the claimant's impairments only "to the extent that the impairment is supported by the medical evidence." *Jens*, 347 F.3d at 213. The ALJ incorporated Fritz's memory impairment, which was amply supported by the record, into his RFC, limiting Fritz to unskilled work involving simple, routine, and repetitive tasks. (Tr. 18; *see* Tr. 27.) That the ALJ did not consider other, unsupported symptoms of Fritz's purported dementia, or link his memory difficulties to dementia, does not render the RFC flawed or justify a remand. *Cf. Bucholz*, 2009 WL 4931393, at *11 ("Where . . . there is no evidence that a given disease has any effect on a claimant's ability to work, the disease cannot be relevant to the determination that the claimant is able to work."). As such, the ALJ's RFC assessment is supported by substantial evidence and will not be disturbed.

*D. The ALJ's Reliance on Dr. Johnson's Opinion Is Supported by Substantial Evidence*

Next, Fritz argues that the ALJ erred in relying on the opinion of Dr. Johnson, a state agency reviewing psychologist, because her opinion was not based on all the relevant evidence and was conclusory. (Opening Br. 11-12.) Much like his first argument, this second challenge

14

to the ALJ's decision also fails to gain traction.

To review, in her mental RFC assessment, Dr. Johnson noted that although Fritz appeared to have some memory problems, at the mental status exam, he was able to recall incidents when he had forgotten things, could still drive, and remembered how to use a microwave and rider mower. (Tr. 372.) Dr. Johnson ultimately opined that Fritz could understand, remember, and carry out simple tasks, relate on at least a superficial and ongoing basis with co-workers and supervisors, attend to tasks for sufficient periods of time to complete them, and manage the stress involved with simple work. (Tr. 373.)

Replicating his initial argument, Fritz contends that, like the ALJ, Dr. Johnson also failed to consider his dementia in assessing his mental RFC, making her opinion unsupported by the record and the ALJ's subsequent reliance on it error. (Opening Br. 11.) As explained above, however, not only was Fritz's dementia diagnosis not conclusively established, but Fritz presents no evidence that he suffered from symptoms of dementia besides memory impairment. Just as the ALJ did, rather than focusing on the fact of a diagnosis, which itself does not establish an impairment's severity or limitations or its effect on the claimant's ability to work, *see Estok*, 152 F.3d at 639; *Buchholz*, 2009 WL 4931393, at *11, Dr. Johnson honed in on Fritz's symptoms, considering his memory problems, but also what he was able to do despite those problems—he could, for example, drive and recall how to use a microwave and rider mower.

Moreover, Dr. Johnson relied on the opinion of the consultative examiner, Dr. Oetting—an opinion Fritz does *not* challenge—who examined Fritz and found his memory in the borderline range and diagnosed him with major depressive disorder, single episode, mild; amnestic disorder due to stroke; rule-out learning disorder; and borderline intellectual

15

functioning. (Tr. 354-55); *see* 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i) ("State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation."). As such, Dr. Johnson's opinion was *not* unsupported by the record, and the ALJ, in turn, did not err in relying on it.

Not to be deterred, Fritz further argues that Dr. Johnson's opinion was conclusory and failed to explain how his amnestic disorder and dementia only affect his ability to understand, remember, and carry out *detailed* instructions or sustain *intense* focus when the record shows that his ability to carry out the simplest tasks was severely compromised. (Opening Br. 12; Reply Br. 3.) Contrary to Fritz's argument, however, Dr. Johnson adequately explained her opinion.

In explaining her mental RFC assessment, Dr. Johnson acknowledged that Fritz had some memory problems, but pointed out that he could recall incidents where he had forgotten things and that he was still able to drive and use a microwave and rider mower. (Tr. 372.) She further recounted that he could care for his hygiene, vacuum, shop, and socialize with family, ultimately finding his functioning allegations only partially credible given that his activities of daily living appeared within normal limits. (Tr. 372.) Thus, according to Dr. Johnson's review of the record, Fritz's impairments did *not* severely compromise his ability to carry out even the simplest tasks as he claims. Fritz's apparent disagreement with Dr. Johnson's evaluation of his abilities does not render her opinion conclusory or her explanation inadequate. Accordingly, because Dr. Johnson adequately explained her reasoning, the ALJ did not err in relying on her opinion. *See Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004) ("It is appropriate for an ALJ

to rely on the opinions of physicians and psychologists who are also experts in social security disability evaluation."); *Ottman v. Barnhart*, 306 F. Supp. 2d 829, 838 (N.D. Ind. 2004) (same).

Ultimately, Fritz's challenges amount simply to a plea to reweigh the evidence in the hope that it will come out in his favor this time, which the Court cannot do. *See Cannon v. Apfel*, 213 F.3d 970, 974 (7th Cir. 2000) (explaining that the court is not allowed to substitute its judgment for the ALJ by "reweighing evidence" or "resolving conflicts in evidence"). Because the ALJ adequately accounted for all of Fritz's supported impairments and symptoms in assessing the RFC and appropriately relied on Dr. Johnson's opinion, which was supported by the record, a remand is not warranted on either of these bases.

## V. CONCLUSION

For the reasons articulated herein, the decision of the Commissioner is AFFIRMED. The Clerk is directed to enter a judgment in favor of the Commissioner and against Fritz.

SO ORDERED.

Enter for this 31st day of July, 2013.

S/Roger B. Cosbey<br>
Roger B. Cosbey,<br>
United States Magistrate Judge